**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

ZHAN GAO,                                                    )
                                                             )
               **Petitioner,**                )
                                                             )          **Civil Case No. 1:05cv242**
               **v.**                        )
                                                             )          **Criminal Case No. 1:03cr333**
UNITED STATES OF AMERICA,                                    )
                                                             )
               **Respondent.**               )

## MEMORANDUM OPINION

Petitioner Zhan Gao, a citizen of the People's Republic of China ("PRC"), was earlier sentenced to a seven-month custody sentence and an eight-month period of community confinement for tax fraud and unlawful export of computer components. She completed her custody sentence in April 2005, but is currently detained and awaiting removal proceedings. She has now filed a motion *pro se* to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255. Because the facts and legal contentions are adequately set forth in the existing record, oral argument is unnecessary.[1] For the reasons set forth below, the petition must be denied.

## I.

On November 26, 2003, petitioner pled guilty to one count of unlawful export of Commerce Control List articles in violation of 50 U.S.C. § 1705(b), and one count of tax fraud in violation of 26 U.S.C. § 7206(1). The record reflects that from mid-2000 until January 2001, petitioner, acting through various business entities, purchased certain federally-regulated

---

[1] *See United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988) (recognizing that "[a] hearing is not required . . . on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

electronic components from domestic manufacturers and suppliers and then shipped them,

unlicensed, to Chinese corporations engaged, *inter alia*, in the acquisition of military and dual-

use technology[2] for the armed forces of the PRC.  In one such transaction in October 2000,

petitioner sent a shipment of eighty MG80486DX2-50 microprocessors ("DX2-50s") to the

Nanjing Research Institute of Electronics Technology,[3] one of the PRC's preeminent designers of

radar systems for military and civilian aircraft.  Under Department of Commerce ("DOC")

regulations, microprocessors with the DX2-50's characteristics, *i.e.*, operational capability over

the entire ambient temperature range from -55° C to 125° C, are designated "NS2," or "national

security," because of their military applications, and therefore require a license for export to the

PRC, among other places.[4]  For her services, petitioner received substantial sums of money from

her Chinese clients in the latter half of 2000, none of which was reported on petitioner and her

husband's federal income tax return for that year.  In May 2001, for reasons undisclosed in the

record, DOC officials undertook a licensing determination for the DX2-50 and concluded, for the

reasons stated above, that the device requires a license for export to the PRC.  Petitioner was

eventually arrested in February 2002 after the Customs Service learned of her illegal export

activities from a supplier who had discovered that her cover story — that the controlled

components were for university research in the United States — was false.

---

[2] "Dual-use" technology has both military and non-military applications.  Electronic computer components are an example of dual-use technology.

[3] The invoice on petitioner's shipment was addressed to the "Nanjing SunSea Industry Corp.," one of several names under which the Nanjing Research Institute conducts business.

[4] *See* 15 C.F.R. § 774 Supp. 1 (the Commerce Control List) at 658 (2002 ed.) ("3A001" and "a.2.c"); 15 C.F.R. § 738 & Supp. 1 (the Commerce Country Chart) at 229-35 (2000 ed.).

During the course of petitioner's plea hearing, the Court conducted an extensive colloquy with petitioner to ensure that her guilty plea was knowing and voluntary, inquiring, *inter alia*, into her understanding of the nature of the charges against her, the possible penalties she faced, and the consequences of pleading guilty.  In response to the Court's questions, petitioner stated, under oath, that she possessed a doctoral degree in sociology from Syracuse University, and that she was fully satisfied with the advice and counsel of her attorneys.  Petitioner further stated that she understood the charges against her, the potential punishment she faced, and the rights she would waive by pleading guilty, including, among others, her right to appeal any custody sentence within the statutory maximum for the offenses charged.

When asked in the course of the plea hearing to give her version of the offense conduct alleged by the government, petitioner admitted (i) that she had shipped unlicensed DX2-50s to China, even though at the time of shipment she suspected that licenses were required, and (ii) that she took no action to correct or amend a joint federal income tax return filed by her husband that she knew to be false.[5]  Thereafter, government counsel outlined the facts the government would prove were the case to proceed to trial, and petitioner, having listened to this recitation of the facts, affirmed that it was true and correct in all respects, subject only to the clarifications that the items she exported had civilian as well as military uses, and that her Chinese clients were

---

[5] With respect to the unlawful export charge, petitioner stated, "I knew that it was possible that the Intel microprocessors that I exported needed a license.  But I avoided making any inquiries to find out.  I did not want to find out about the license, because I knew that almost all the applications for a license would be denied.  I ultimately shipped the item without a license." *United States v. Gao*, Case No. 1:03cr333, tr. at 49-50 (E.D. Va. Nov. 26, 2003) (Plea). With respect to the tax fraud charge, petitioner stated, "I was not in the United States in April 2001.  But I learned when I got back that my husband had filed for taxes in April 2001, ... and I also learned that the tax return did not report any of the income that we received from my business. ...  But I didn't do anything to correct it." *Id.* at 51-52.

involved in civilian as well as military operations.  On the basis of petitioner's sworn responses and representations, and the plea colloquy as a whole, the Court accepted petitioner's plea of guilty, finding that she was fully competent and capable of entering an informed plea of guilty to the two charges, and that her plea to those charges was knowing and voluntary.  *United States v. Gao*, Case No. 1:03cr333, tr. at 57 (E.D. Va. Nov. 26, 2003) (Plea).

Thereafter, a Presentence Investigative Report ("PSIR") was prepared that identified petitioner's sentencing range under the federal Sentencing Guidelines as 30-37 months, based on (i) a category I criminal history, (ii) a base offense level of 22; and (iii) a 3-level downward adjustment for acceptance of responsibility.  The acceptance-of-responsibility adjustment was supported, in part, by a letter that petitioner had submitted to the Court in which she expressed apparently genuine remorse for her criminal actions, stating, "I take full responsibility for my past conduct," and "I followed the wrong path and made a serious mistake for which I am willing to accept my responsibility and the proper punishment."  Letter from Zhan Gao dated Feb. 29, 2004.

At sentencing in March 2004, neither party objected to the PSIR, and accordingly the Court adopted the PSIR's findings and conclusions.  Also at sentencing, the government moved for a downward departure from the Guidelines sentencing range pursuant to U.S.S.G. § 5K1.1, based on petitioner's substantial assistance on matters of national security.  The government's motion was granted and petitioner's total offense level was reduced from 19 to 12.  Petitioner was then sentenced — under the then-mandatory Sentencing Guidelines — to 15 months incarceration, with 7 months to be served in prison and 8 to be served in community confinement.  *See United States v. Gao*, Case No. 1:03cr333 (E.D. Va. March 5, 2004)

-4-

(Judgment).  As a special condition, it was ordered that the custody sentences of petitioner and her husband be staggered in order to accommodate their child-care obligations.[6]  Additionally, petitioner was not immediately taken into custody, but rather was permitted to self-surrender in three months.  As a matter of grace, this three-month period was later extended to six months, *i.e.*, until September 2004, to permit petitioner to continue nursing her infant son until his first birthday.  *See United States v. Gao*, Case No. 1:03cr333 (E.D. Va. May 24, 2004) (Order).

In October 2004, a month after petitioner began serving her custody sentence, her husband, apparently unaware that the DOC, over three years earlier, had classified the DX2-50 as requiring an export license, sent a request for licensing information on the DX2-50 to the DOC. In response, the DOC issued a letter stating, in effect, that the DX2-50 does *not* carry an "NS2" designation, and does not require a license for export to the PRC.[7]  Approximately four months later, armed with this information, petitioner, *pro se*, filed the present motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  In her motion, petitioner attacks both her conviction and her subsequent sentence, grouping her arguments into three broad categories:

(i)     *Misinformation*.  Petitioner contends that her conviction was obtained through, and that her sentence was based on, misinformation provided to the Court by the prosecution.  Petitioner specifically contends:

(a)     that the DX2-50 does not require a license for export to China;

---

[6] Petitioner's husband pled guilty to one count of income tax fraud in November 2003 and was sentenced to twelve months incarceration in April 2004.  *United States v. Xue*, Case No. 1:03cr334 (E.D. Va. Nov. 26, 2003 & April 9, 2004) (Plea & Judgment).

[7] The letter stated only that the DX2-50's Export Control Classification Number is "3A991.A.2."  Petitioner or her husband thereafter reviewed the relevant DOC regulations and discovered that items so classified do not carry an "NS2" designation and hence do not require a license for export to the PRC.  *See* 15 C.F.R. § 738 & Supp. 1 at 229-35 (2000 ed.).

-5-

      (b)    that the PSIR incorrectly states that the TGA-9083 — another product that petitioner exported to China — is on the Defense Department's Munitions List; and

      (c)    that her plea agreement misstates her federal income tax deficiency and the maximum fine to which she could be subjected.

    (ii)    *Ineffective Assistance of Counsel*.  Petitioner contends that her counsel:

      (a)    failed to investigate the unlawful-export charge, and thus did not discover that the DX2-50 does not require a license for export to China;

      (b)    failed to study the tax fraud charge, and thus did not understand that petitioner lacked the requisite criminal intent to be guilty of tax fraud; and

      (c)    advised and pressured petitioner to plead guilty on the basis of a false understanding of the merits of her case, such that petitioner's guilty plea was not knowing, voluntary, and intelligent.

    (iii)    *United States v. Booker*.  Petitioner contends:

      (a)    that the PSIR contained incriminating information to which she did not admit, in violation of her Sixth Amendment rights; and

      (b)    that the Court wrongly treated the federal Sentencing Guidelines as mandatory at her sentencing.

A few weeks after filing her § 2255 motion, petitioner filed a supplemental memorandum setting forth additional grounds for relief, namely (i) that the PSIR was not the result of the Court's independent investigation, (ii) that the amount of her criminal forfeiture was unjustified; and (iii) that the TGA-9083 did not require a license for export to Hong Kong, where petitioner thought the item would go.

    In April 2005, petitioner completed her prison term and was released to begin serving the community confinement portion of her sentence.  Under settled law, her release into community confinement does not render her § 2255 motion moot.  *See Jones v. Cunningham*, 371 U.S. 236

-6-

(1963) (holding that prisoner whose criminal sentence has not yet expired is "in custody" for purposes of habeas corpus even if released). Upon release from custody, however, petitioner was immediately detained by Immigration and Customs Enforcement ("ICE"), which currently holds her in administrative custody pending removal proceedings. Petitioner subsequently filed three separate motions here for relief from ICE detention, all of which were denied. *See United States v. Gao*, Case No. 1:03cr333 (E.D. Va. April 22, 2005) (Order). Accordingly, the "custody" challenged by the present § 2255 motion is the unexpired community confinement portion of petitioner's criminal sentence, not her administrative detention by ICE. *Cf. Maleng v. Cook*, 490 U.S. 488, 493 (1989) (holding that petitioner in federal custody could seek habeas relief from state sentence he was not then serving).

Also in April 2005, presumably in response to the instant § 2255 motion, the DOC issued a letter revising its response to the October 2004 licensing inquiry by petitioner's husband. In this letter, the DOC reaffirmed its May 2001 classification of the DX2-50, noting specifically that "a license is required for ... export to the People's Republic of China." Letter from DOC Bureau of Indus. & Sec. to Dong Xue (April 9, 2005). According to the declaration of Anthony Koo, the DOC official who issued both the October 2004 and April 2005 letters, the October 2004 letter was in error. In his declaration, Koo avers that when he initially determined the DX2-50's export classification in response to plaintiff's husband's inquiry, he was unaware that the device was a "military grade microprocessor," and that upon review of the DX2-50's specifications — in particular its temperature tolerance — he has determined that the DOC's original May 2001 licensing determination was correct. *See* Decl. of Anthony Koo at ¶ 4.

In May 2005, the government filed an opposition to petitioner's § 2255 motion, arguing,

*inter alia*, (i) that apart from her claims of ineffective assistance of counsel, petitioner's challenges to her conviction are foreclosed by her knowing and voluntary guilty plea, and (ii) that petitioner's challenges to her sentence are not cognizable under § 2255.  Consistent with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K), the government sent notice to petitioner of her right to respond to its opposition by filing affidavits, statements, exhibits, or other factual or legal material supporting her claims.  *See United States v. McDonald*, 1 Fed. Appx. 198, 199 (4th Cir. 2001) (holding *Roseboro* notice required in § 2255 cases).

Since receiving the *Roseboro* notice, petitioner has filed a motion for an extension of time to respond to the government's opposition.  In her motion, petitioner contends that the DOC's latest licensing determination for the DX2-50 improperly conflates the terms "case temperature," which is used in the device's manufacturer specifications, and "ambient temperature," which is used in the relevant DOC regulation.  *See* 15 C.F.R. § 774 Supp. 1 at 658 (2002 ed.) ("3A001" and "a.2.c").  According to petitioner, the fact that the DX2-50 can function in *case* temperatures of -55° C to 125° C does not mean that it can function in *ambient* temperatures of the same range, and it is the latter capability that is required for the "NS2" designation to apply.  Petitioner states that she intends to request yet another licensing determination from the DOC to correct this misunderstanding, and thus requires additional time to respond to the government's opposition.

The merits of both petitioner's § 2255 motion and her motion for an extension of time to respond to the government's opposition are addressed here.

## II.

It is well-settled that where a judgment of conviction upon a guilty plea is subjected to collateral attack, such as by a motion pursuant to 28 U.S.C. § 2255, the judicial inquiry is

-8-

"ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989); *accord United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993).[8] As the Fourth Circuit has explained, "a guilty plea constitutes a waiver of all non-jurisdictional defects ... including 'the right to contest the factual merits of the charges.'" *Willis*, 992 F.2d at 490 (quoting *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1988)). Here, therefore, petitioner's guilty plea makes it unnecessary to consider her challenges to the merits of her conviction, and only her claims of ineffective assistance of counsel are subject to review. *Id.*

To prevail on an ineffective-assistance claim, a defendant must show (i) that his attorney's performance fell below an objective standard of reasonableness, and (ii) that the deficient performance prejudiced his defense and deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984). With respect to the latter prong, a defendant who has pled guilty has suffered prejudice where "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, petitioner contends that her attorneys' performance was deficient in three ways: (i) they refused to investigate the unlawful-export claim, and consequently did not discover that the DX2-50s did not require an export license; (ii) they failed to study the charge of tax fraud, and thus did not understand that petitioner did not possess the requisite criminal intent to be guilty of that charge; and (iii) as a result of these failings, they pressured petitioner to plead guilty on the basis of an erroneous understanding of her case, such that her guilty plea was not knowing,

---

[8] The Supreme Court has recognized a narrow exception to this rule for cases where a double jeopardy violation is apparent from the established record. *See Menna v. New York*, 423 U.S. 61 (1975); *Blackledge v. Perry*, 417 U.S. 21 (1974). This exception has no application here.

voluntary, and intelligent.

Petitioner's first obstacle to recovery on these claims is the fact that at her plea hearing, petitioner was twice asked whether she was fully satisfied with the advice and counsel of her attorneys, and twice she responded in the affirmative. *See United States v. Gao*, Case No. 1:03cr333, tr. at 12, 19 (E.D. Va. Nov. 26, 2003) (Plea). Because sworn statements made by a pleading defendant during a Rule 11 colloquy "carry a strong presumption of verity," and require the dismissal of any § 2255 motion relying on contrary allegations absent "extraordinary circumstances," petitioner's statements that she was satisfied with her attorneys' performance preclude consideration of any ineffective-assistance claim the grounds for which were apparent to petitioner at the time she entered her plea. *See United States v. Lemaster*, 403 F.3d 216, 221-222 (4th Cir. 2005). In her memorandum in support of her § 2255 motion, petitioner makes clear that she specifically raised the issue of her intent to commit tax fraud — or lack thereof — with her attorneys prior to entering her plea. Petitioner's statements at her plea hearing thus indicate that the issue was resolved to petitioner's satisfaction when she entered her plea, and petitioner may not now use it as the basis for an ineffective-assistance claim under § 2255. Accordingly, petitioner's second claim of ineffective assistance of counsel must fail.[9]

---

[9] While petitioner's statements at her plea hearing render it unnecessary to address the merits of her ineffective-assistance claim concerning her intent to commit tax fraud, it is worth noting that petitioner's lead attorney, Mark Hulkower of the law firm Steptoe & Johnson LLP, is a former federal prosecutor and an experienced white-collar criminal defense attorney. It is highly unlikely that he overlooked or misunderstood an element as basic as criminal intent. Moreover, even if it were shown that Mr. Hulkower and petitioner's other attorneys ignored the issue of intent, petitioner's ineffective-assistance claim would nonetheless fail, as she would still be unable to establish that she was prejudiced in any way by their failure to explore the issue. As petitioner stated at her plea hearing, she knew that her tax return failed to disclose all her income, but did not correct it. Those facts suffice to establish that she had the requisite intent. *See, e.g.*, *United States v. Pomponio*, 429 U.S. 10, 12 (1976) (noting that the "willfulness" requirement in

Petitioner's other ineffective-assistance claims stand on a different footing, however, as the record reflects that it was not until *after* petitioner's plea hearing that she came to believe that the microprocessors she exported did not require an export license.  Thus, petitioner's claims (i) that her attorneys did not discover that her exports were legal, and (ii) that they pressured her to plead guilty on the basis of an erroneous understanding of her case, are not contradicted by the fact that, at the time of her plea hearing, she was satisfied with their advice.  Those claims, accordingly, must be evaluated on their merits.

First, petitioner's claim that her attorneys failed to discover that the DX2-50 did not require an export license must fail because there was nothing for her attorneys to discover.  By the time of petitioner's arrest in February 2002, the DOC had determined that under existing export regulations, the DX2-50 required a license for export to China because of its utility in military applications.  This determination was not subject to review in federal court.  *See United States v. Spawr Optical Research, Inc.*, 864 F.2d 1467, 1473 (9th Cir. 1988) ("It would severely undermine the [DOC's] authority if judges and juries in individual criminal proceedings were permitted to reverse licensing determinations.").  Accordingly, by the time petitioner's attorneys began work on her case, the issue of the necessity of an export license for the DX2-50 had been conclusively established, and additional research on that point by her attorneys would have yielded nothing.  Thus, petitioner's attorneys did not provide substandard assistance by declining to pursue it further, nor did petitioner suffer any prejudice as a result of their failure to do so.  The fact that petitioner subsequently obtained a DOC licensing determination contrary to the

_____

26 U.S.C. § 7206 is met by "knowledge that the taxpayer 'should have reported more income than he did'") (quoting *Sansone v. United States*, 380 U.S. 343, 353 (1965))).

original licensing determination does not alter this conclusion.  Significantly, the DOC has since

retracted the October 2004 letter on which petitioner relies and reaffirmed the original finding

that the DX2-50 requires a license for export to the PRC.  More importantly, however, a

licensing determination issued post-conviction cannot change the fact that petitioner's attorneys

did not act deficiently when, consistent with settled law, they regarded as unassailable the DOC

licensing determination in effect while petitioner's case was pending.  *See Spawr Optical

Research*, 864 F.2d at 1473.  Thus, neither the October 2004 licensing determination nor any

future licensing determination that petitioner may obtain from the DOC is relevant to her claim

of ineffective assistance of counsel, and, accordingly, there is no need to delay the disposition of

petitioner's § 2255 motion while she requests yet another ruling from the DOC.[10]

Second, petitioner's claim that her attorneys pressured her to plead guilty on the basis of

an erroneous understanding of her case is properly construed not as a claim of ineffective

assistance of counsel, but rather as a claim that her guilty plea was not knowing, voluntary, and

intelligent.  As such, it is procedurally defaulted as a result of petitioner's failure to raise it on

direct review.  *See United States v. Bousley*, 523 U.S. 614, 621 (1998) ("[T]he voluntariness and

intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct

review."); *United States v. Benboe*, 157 F.3d 1181, 1184 (9th Cir. 1998) (finding procedural

default in case of defendant who had waived his right to appeal); *United States v. Jones*, 1995

U.S. App. LEXIS 13021, at *3 (4th Cir. May 30, 1995) ("Although Jones's plea agreement

---

[10] Though irrelevant to petitioner's ineffective-assistance claim, it is worth noting that nothing in the record suggests that the DOC would change its licensing determination for the DX2-50 based on petitioner's distinction between "case temperature" and "ambient temperature."

-12-

prevented him from appealing, this is not sufficient cause for his procedural default."). Accordingly, petitioner can prevail on this claim only if she can show either (i) cause excusing her failure to raise the claim on direct appeal and prejudice resulting therefrom, or (ii) actual innocence. *See Bousely*, 523 U.S. at 622; *Benboe*, 157 F.3d at 1184. Petitioner, however, has shown neither of these. She has provided no reason that would satisfy the cause requirement, and she cannot establish that she was prejudiced by her guilty plea because the record in her case conclusively points to her guilt. Further, petitioner has not presented, as she must to show actual innocence, "new reliable evidence" making it "more likely than not that no reasonable juror would have convicted [her]" of the offense charged. *See Royal v. Taylor*, 188 F.3d 239, 243-44 (4th Cir. 1999) (citations omitted). Moreover, even if petitioner could satisfy either the cause and prejudice or actual innocence requirements, the record manifestly reflects that her plea was both knowing and voluntary, as it is clear from petitioner's plea colloquy that she understood both the nature of the charges against her and the criminal conduct to which she was admitting. Petitioner's third claim of ineffective assistance of counsel, properly construed as a challenge to the voluntariness of her guilty plea, must therefore fail.

   In sum, all of petitioner's challenges to her conviction fail. Her challenges to the merits of her conviction are barred by her guilty plea. Her claims of ineffective assistance of counsel, although not barred by her guilty plea, are defeated by her statements at her plea hearing and by the fact that she has established neither deficient attorney performance, nor prejudice resulting therefrom. Finally, her claim that her plea was not knowing and voluntary, although not barred by her guilty plea, is procedurally defaulted and defeated by her representations at her plea hearing that she understood the nature of the charges against her and the consequences of

pleading guilty.  Accordingly, insofar as petitioner's motion attacks the Court's judgment of conviction, the motion must be denied.

### III.

Unlike her collateral attacks on her conviction, petitioner's collateral attacks on her sentence are not barred by her guilty plea.  *See*, *e.g.*, *United States v. Pregent*, 190 F.3d 279 (4th Cir. 1999) (collateral attack on sentence by prisoner who had pled guilty).  Nevertheless, petitioner's challenges to her sentence also fail.  Absent extraordinary circumstances, § 2255 does not exist to correct non-constitutional errors in the imposition of criminal sentences.  *Id.* at 283.  Accordingly, because petitioner's sentence was within the statutory maximum for her offenses of conviction — indeed, was only one-eighth of the maximum[11] — her claims that her sentence was the result of misinformation provided to the Court are not cognizable under § 2255. *Id.* at 284.  Additionally, the purported misinformation in the PSIR on which petitioner's claims are based, *e.g.*, the amount of her federal income tax deficiency, was not material to the Sentencing Guidelines calculation or the sentence that petitioner ultimately received.  Thus, even if the PSIR contained misinformation — and there is no reason to think that it does — correcting the misinformation would have no effect on petitioner's sentence.  Finally, in addition to the immateriality of any mistaken information in the PSIR, plaintiff essentially waived any objection to it, as she was given the opportunity to review the PSIR with her counsel prior to sentencing and to call to the Court's attention any errors or inaccuracies in the report.  No objections were asserted as to the matters now claimed to be mistaken.

---

[11] The maximum custody sentence for violations of export regulations is ten years.  *See* 50 U.S.C. § 1705(b) (2005).

Petitioner's claims that ostensibly allege constitutional violations — her claims that her sentence violated her Sixth Amendment rights under *United States v. Booker*, 125 S. Ct. 738 (2005) — are also not cognizable under § 2255, but for a different reason.  Petitioner's sentence became final in March 2004, and *Booker* was decided in January 2005.  Thus, to afford plaintiff a ground for relief, *Booker* would have to apply retroactively to cases on collateral review, which it does not.[12]  Accordingly, all of petitioner's challenge to her sentence fail.

## IV.

For the foregoing reasons, petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 must be denied, as must her motion for an extension of time to respond to the government's opposition to her § 2255 motion.  Yet, because it is apparent that ICE has frustrated the purpose of petitioner's split sentence by taking her into custody following her release from prison and, for reasons not apparent from the record, refusing to release her on bond to serve the community confinement portion of her sentence, justice demands that the community confinement portion of petitioner's sentence be vacated.

An appropriate Order shall issue.

_____/s/_____

Alexandria, Virginia                                        T. S. Ellis, III
June 27, 2005                                              United States District Judge

---

[12] *See Lloyd v. United States*, 2005 U.S. App. LEXIS 8699 (3d Cir. 2005); *Guzman v. United States*, 404 F.3d 139 (2d Cir. 2005); *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005); *Varela v. United States*, 400 F.3d 864 (11th Cir. 2005); *McReynolds v. United States*, 397 F.3d 497 (7th Cir. 2005); *United States v. Johnson*, 353 F. Supp. 2d 656 (E.D. Va. 2005); *United States v. Hepburn*, 2005 U.S. Dist. LEXIS 8135 (E.D. Va. 2005); *Arnette v. United States*, 2005 U.S. Dist. LEXIS 7734 (E.D. Va. 2005); *United States v. Hernandez*, Case No. 1:90cr348 (E.D. Va. May 24, 2005) (Order).